In re The GHR COMPANIES, INC., f/k/a Good Hope Industries, Inc., GHR Energy Corp., f/k/a Good Hope Refineries, Inc., Southern States, Inc., Southern States Exploration, Inc., Laredo Exploration, Inc., GHR Pipeline Corp., f/k/a Southern Pipe Line Corporation, and Southern Petroleum Trading Co., Ltd., Debtors.

Bankruptcy Nos. 4–83–00056–G, 4–83–00060–G, 4–83–00092–G to 4–83–00095–G and 4–83–00136–G.

United States Bankruptcy Court, D. Massachusetts.

Aug. 13, 1984.

Stephen F. Gordon, McCabe Gordon, Boston, Mass., for Good Hope Energy Corp.

Gerrard Kelley, Boston, Mass., Asst. U.S. trustee.

Sumner Darman, Silverman & Kudisch, Boston, Mass., for The GHR Companies, Inc.

Joseph Braunstein, Riemer & Braunstein, Boston, Mass., for GHR Energy Corp.

Lon S. Babby, Williams & Connolly, Washington, D.C., for Arthur Andersen.

Robert M. Gargill, Choate, Hall & Stewart, Boston, Mass., for Continental Ill. Nat. Bank & Trust Co. of Chicago agent for debtors' secured bank creditors.

Van Oliver, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for GHR Pipeline Corp., Southern States, Inc., Southern States Exploration, Inc.

Anthony Constantini, Peat, Marwick Mitchell & Co., New York City, for Peat, Marwick, Mitchell & Co.

James Irvin, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for Coopers & Lybrand.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

This case comes before the Court on the motion of the debtors ("GHR") for a stay pending appeal of that part of this Court's order entered July 27, 1984, 41 B.R. 655, ordering GHR's accountants, Coopers & Lybrand ("Coopers"), to produce certain audit and tax workpapers to GHR's se-

cured bank creditors ("Banks"). Memoranda of law were filed by GHR and the Banks, and a telephonic hearing was held on August 6, 1984.

The facts of the case are discussed at length in the July 27 memorandum and order ("July 27 order"). The narrow issue presented by GHR's motion to stay is whether the July 27 order adequately considered and disposed of GHR's and Coopers' allegations that documents in the Hartford office of Coopers are protected from discovery by attorney-client privilege or workproduct immunity.[1]

▐ GHR now argues for the first time that an in camera review of the documents is required "or at least an adequate evidentiary record as to which documents are privileged and which are not." Other than broad assertions that the Hartford files contain information gathered and prepared at the direction of special counsel in anticipation of litigation of the IRS tax claims, nowhere in the voluminous record of this proceeding has GHR identified specific documents claimed to be privileged. Conclusory statements are not sufficient to support a claim of privilege. *In re Federal Copper of Tennessee, Inc.,* 19 B.R. 177, 181 (Bankr. M.D.Tenn.1982) (blanket assertion of privilege and "unsubstantiated contention [are] insufficient to carry debtors' burden of proof") (citing *United States v. Davis,* 636 F.2d 1028, 1044 (5th Cir.1981); *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974); *Commercial Credit Corp. v. Repper,* 309 F.2d 97, 98–99 (6th Cir. 1962)). *See also International Paper Co. v. Fireboard Corp.* 63 F.R.D. 88, 94 (D.Del. 1974) ("proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality").

GHR admits it did not specifically identify the documents alleged to be subject to attorney-client privilege or workproduct immunity. GHR states it assumed that an item-by-item review was unnecessary because it expected the outcome of *United States v. Arthur Young & Co.,* —— U.S. ——, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), to be favorable to its position that an accountant-client privilege could be invoked to prevent the production of the documents. In support of its motion to stay the July 27 order, GHR says, with respect to the identification of allegedly privileged documents, that "it was a sensible conservation of the debtors' resources not to have done it prior to this time."

*Arthur Young & Co., supra,* was decided on March 21, 1984, but neither GHR nor Coopers filed supplementary pleadings thereafter identifying specific documents for which attorney-client privilege or workproduct immunity is claimed. A stay is not for the purpose of giving GHR yet another chance to attempt to establish what it has neglected to do for the past six months.[2]

▐ A primary reason for denying a stay pending appeal is failure on the part of the movant to establish a reasonable likelihood of success on the merits. *Latino Political Action Committee, Inc. v. City of Boston,* 716 F.2d 68 (1st Cir.1983); *Ramsdell v. G.H. Coffey Co.,* 632 F.2d 162 (1st Cir.1980). Other reasons for denying a stay exist if the extent of irreparable harm to the movant is unclear and the equities do not seem to be on the side of the movant. *Ramsdell, supra,* at 163.

▐ The Court has considered whether GHR is likely to succeed on the merits on appeal and concludes that the July 27 order is dispositive of all issues raised, including the claims of attorney-client privilege and work-product immunity. Consideration of the pleadings and arguments of counsel

---

1. No such claims of privilege or workproduct immunity were made regarding the documents ordered to be produced by the other GHR accountants, Arthur Andersen & Co. and Peat, Marwick, Mitchell & Co.

2. On June 22, 1983, the Court ordered Rule 2004 examinations and the production of documents, many of which were subsequently produced. At a hearing on February 6, 1984, the Court requested memoranda of law and took under advisement whether the remaining documents should be produced.

made in connection with GHR's motion to stay the July 27 order compel a finding that there is little if any likelihood of success on appeal. GHR and Coopers had the burden of proving that specific documents were privileged or immune from discovery. They failed to carry that burden.

Among the reasons the Banks seek copies of the work-papers at issue are that they must be analyzed (1) to determine the extent to which the estate may be liable to creditors and the assets which will be available to pay claims; (2) to evaluate the position taken by the IRS with regard to GHR's tax liability; (3) for possible use as evidence in support of their motion for appointment of a trustee;[3] and (4) in order to develop a disclosure statement.[4]

It would be inequitable, given the length of time GHR had to make a prima facie case, to expect the Banks to stand by during a potentially lengthy appellate process before being able to analyze the documents they have been seeking since June of 1983.[5]

The effect of a stay pending appeal would be contrary to the public interest as well as the interest of all the creditors.[6] Not only should the resources of the debtors be conserved but those of all the parties. Costs attendant this litigation are considerable, and the creditors have a very strong interest in seeing that further delay is not encountered in what already have been protracted proceedings.

Denial of the motion to stay, unlike the situation that existed in *Providence Journal v. FBI*, 595 F.2d 889, 890 (1st Cir.1979), cited by GHR in support of its motion, will not "utterly destroy the status quo" or cause GHR irreparable harm. Those documents deemed confidential would be protected by this Court's protective order entered on September 12, 1983. It should also be borne in mind that the Banks are not in an adversarial position with GHR

concerning the IRS tax claims to which the allegedly privileged documents are said to relate, and it would be against the Banks' interests if GHR's tax liability is increased.

In view of the foregoing, the Court finds:

1. GHR has not made a showing that it is likely to succeed on the merits on appeal;

2. It has not been established that GHR will suffer irreparable harm if the stay is not granted;

3. On balancing the equities, there is more likelihood of harm to the Banks and other creditors if a stay is granted; and

4. Further delaying the production of documents is not justified and is not in the public interest or in the interest of creditors.

The motion to stay the July 27, 1984 order compelling the production of documents is therefore denied.

SO ORDERED.

---

3. The trustee motion is scheduled to be heard in the Bankruptcy Court for the Southern District of Texas on November 12, 1984.

4. The Banks filed a plan of reorganization on May 30, 1984; no disclosure statement has yet been filed.

5. See *supra* note 2.

6. As noted in the July 27 order, the creditors' committee supports the Banks' position.